UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

THE CITY OF NEW YORK,

       Plaintiff,

  v.

FINEST BRAVEST & BOLDEST INC., d/b/a, New York 911 and www.NY911.com,

       Defendant.

------------------------------------------------------------------ x

JUDGE OWEN

05 CIV.  6846

**COMPLAINT**

Plaintiff demands trial by jury

RECEIVED
AUG 01 2005
U.S.D.C. S.D.N.Y.
CASHIERS

       Plaintiff, the City of New York (the "City"), by its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, for its Complaint against the Defendant, respectfully alleges, upon personal knowledge as to itself and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

       1.  This action is based upon the unauthorized and infringing sale by the Defendant of a variety of merchandise bearing the official shield design of the New York City Police Department ("NYPD") and the famous acronym NYPD, which are trademarks belonging to the City. These trademarks have acquired secondary meaning as exclusive identifiers of the NYPD and the City has been selling merchandise to the public bearing these marks since at least as early as 1989. Defendant began using the trademarks in 1996, with knowledge of the City's rights, and has been actively trading on the goodwill of the NYPD and the public's mistaken perception that it is affiliated with and/or sponsored or approved by the NYPD and/or the City. To the extent Defendant used the NYPD trademarks with the implied consent of the City, such

consent has been revoked. Defendant has willfully ignored the City's demands to refrain from selling unlicensed FDNY merchandise.

## PARTIES

2. The City is a municipal corporation organized pursuant to the laws of the State of New York.

3. Defendant Finest Bravest & Boldest, Inc., is a New York corporation with its principal place of business at 263 Lafayette Street, New York, New York 10012.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the City's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the other claims set forth below by virtue of 28 U.S.C. §§ 1338(b) and 1367 and the doctrine of pendent jurisdiction.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this district and because the Defendant, a corporation, may be deemed to reside in this district since its principal place of business is in this district and it is subject to personal jurisdiction in this district.

## THE NYPD TRADEMARKS

6. The City owns all trademarks, logos, names, and insignias associated with the NYPD, including the acronym NYPD (the "NYPD Mark") and a design consisting of the terms POLICE DEPARTMENT CITY OF NEW YORK surrounding a shield design (the "NYPD Shield Design"), which appears as follows:



7. The City, by and through the NYPD, has provided police and civil protection services since at least as early as 1845.

8. The City, by and through the NYPD, has continuously used, since at least as early as July 1, 1971.

9. Further, since at least as early as 1989, the City has used the NYPD Mark and the NYPD Shield Design (collectively, the "NYPD Trademarks") to identify itself and its services on goods sold to the public.

10. The City owns applications for federal trademark registration of the NYPD Shield Design (Serial No. 76/342,569) and the NYPD Mark (Serial No. 76/342,567), in International Classes 6, 9, 14, 20, 21, 25, and 28 (for metal key chains; magnets; jewelry; plastic key chains; house wares; clothing; and toys), which are currently pending at the United States Patent and Trademark Office.

11. The City, through the NYPD, has also obtained New York State trademark registrations for the NYPD Shield Design (Reg. No. R-30538, formerly Reg. No. R-29800) and NYPD Mark (Reg. No. R-30537, formerly Reg. No. R-29799).

12. The City owns registrations for the NYPD Trademarks in California (Reg. Nos. 108,017 and 108,018).

13. The City owns a registration for the NYPD Mark in Japan (Reg. No. 01106542).

14. The City owns applications for registrations of the NYPD Trademarks in Canada (Serial Nos. 1133764 and 1133765).

15. The City owns applications for registrations of the NYPD Trademarks in the European Union (Serial Nos. 3747326 and 3743127).

16. Through many years of use by the City and the NYPD, the NYPD Trademarks have come to represent the highest standards of quality and character with respect to matters of public safety and public service, throughout the United States and the world.

17. As a result of the NYPD's exceptional reputation, and the media attention and other publicity the NYPD has received throughout the years, the NYPD Trademarks have acquired tremendous goodwill and value, and are now recognized throughout the United States and the world as uniquely designating the NYPD.

18. The goodwill and reputation associated with the NYPD Trademarks, and the public's association of the NYPD Trademarks with the NYPD, have grown dramatically in light of the tragic events of September 11, 2001.

19. The distinctive NYPD Trademarks are famous, and are among the best known trademarks and logos in the United States.

### Authorized Use of the NYPD Trademarks

20. The City, by and through the NYPD, has applied the NYPD Shield Design to memorabilia and promotional items, and has continuously used, since at least as early as July 1, 1971, the NYPD Shield Design on caps, t-shirts and sweatshirts.

21. The City, by and through the NYPD, has applied the NYPD Mark to memorabilia and promotional items, and since at least as early as 1989 has continuously used, itself or through its licensees, the NYPD Mark on caps, t-shirts and sweatshirts.

22. In addition, the NYPD has permitted the manufacture and distribution of merchandise bearing the NYPD Trademarks through the New York City Police Foundation, Inc., a nonprofit corporation dedicated to improving public safety in New York City through innovative police-related projects, such as Crime Stoppers (the 1-800-577-TIPS hotline) and the donation of animals and equipment for the NYPD's Mounted and K-9 Units.

23. Through various sub-licenses the New York City Police Foundation has authorized, for the benefit of the NYPD, diverse products bearing the NYPD Trademarks including children's sleepwear, lounge pants and boxer shorts and sets, active wear for men, women, and children, long johns, resin figurines, plush dogs and horses, plush beanie bears, infant's clothing, pencils, pens, pen cases, playing cards, mugs, glassware, collectible plates and spoons, wallets, backpacks, messenger bags, handbags, mint tins, picture frames and photo albums, keyrings, snowglobes, mouse pads, pendants, children's Halloween costumes, slippers and moccasins, leather outerwear, action figures, ceramic figurines, die-cast vehicles (including tow trucks, police cars, boats, and helicopters), watches, lighters, lapel pins, magnets, metal coin banks, bicycles, scooters, bike helmets, accessory kits, throws, pillows, wall hangings, and numerous other items.

24. Prior to 1997, the New York City Police Foundation marketed a variety of consumer goods including handkerchiefs, scarves, apparel, patches, caps, jewelry, key chains, children's clothing, plush toys and coffee mugs carrying the NYPD Trademarks. Such items were sold to the public through the New York City Police Foundation's "Cop Shop" catalog, with proceeds from retail sales used by the New York City Police Foundation to support of various NYPD programs.

25. The license agreements authorizing the various goods referenced above include provisions for the prior approval by the NYPD or its designees as to the design, quality, style, packaging, advertising, publicity and display of authorized merchandise, and for the approval of product samples.

26.     Authorized licensed merchandise generally bears a hangtag or packaging showing the NYPD logo, together with a legend identifying the NYPD name and logo as trademarks of the New York City Police Department.

27.     The NYPD Trademarks have been widely associated with the City and the NYPD, and have been prominently featured in print and broadcast media, in promotional activities, and through the national distribution of licensed goods.

28.     The NYPD Trademarks are famous, and they and their associated goodwill are valuable assets of the City.

29.     Among other things, the NYPD Trademarks have been prominently featured in numerous theatrical motion pictures and in a number of long running and highly successful television series, including among others, "NYPD Blue," "Law and Order" and "Third Watch."

### Enforcement of the NYPD Trademarks

30.     The City has aggressively pursued individuals and companies selling unauthorized or infringing merchandise bearing the NYPD Trademarks.

31.     Hundreds of cease and desist letters have been served by hand on vendors and retailers in New York City and by mail and email on retailers and internet sellers throughout the U.S. and in other countries.  Cease and desist letters are also regularly sent to registrants of domain names incorporating the NYPD Trademarks, virtually all of whom have agreed to cancel or relinquish the offending names.

32.     The City has also obtained agreements from third parties to cease unauthorized use of NYPD Trademarks, or of confusingly similar marks which feature the letters "NYPD" or designs similar to the NYPD Shield Design.  For example, as a result of the enforcement efforts of the City and its affiliates, at least two applicants for marks in the U.S.

Patent and Trademark Office have abandoned their applications (Serial Nos. 78/091,079 and 76/327,600) for registration of marks confusingly similar to the NYPD Trademarks,.

33.    The City also obtained the partial cancellation of a federal trademark (Registration No. 2,241,852) for a mark closely resembling the NYPD Shield Design. Further, the registrant in that case agreed to abandon another pending application in Class 25 (Serial No. 75/633,332), and to assist the City and NYPD if needed to obtain registrations for NYPD insignia.

34.    These and other enforcement efforts have ensured that the public associates the NYPD Trademarks solely with the City or its agency the NYPD, and the public is aware that a variety of goods sold bearing the NYPD Trademarks are sold with the authorization or approval of the City, and for the benefit of the NYPD.

### **Infringing Acts By Defendant And Harm To The City**

35.    Notwithstanding the City's well-known, prior and exclusive common law and statutory trademark rights, the Defendant, without the City's consent, has reproduced and/or caused to be reproduced the City's NYPD Trademarks, and/or confusingly similar variations thereof, for Defendant's own use on a variety of items.

36.    The City has never granted permission to Defendant to sell any merchandise bearing the NYPD Trademarks.

37.    Notwithstanding Plaintiff's demands to cease and desist from selling unlicensed merchandise bearing the NYPD trademarks, Defendant continues to produce and/or caused to be produced various merchandise of its own design bearing the NYPD Trademarks, and/or confusingly similar variations of licensed merchandise.

38.    Defendant's unauthorized products feature unfair and infringing copies of the NYPD Trademarks.

39. Defendant has offered for sale to the general public goods which are identical to those authorized by the City under its NYPD Trademarks.

40. Defendant is offering its infringing and, in some cases, counterfeit, merchandise for sale to the general public from its internet site, www.ny911.com, which is accessible to, and from which the infringing goods may be purchased by, the public throughout New York State, including in this judicial district.

41. Defendant has made numerous internet sales of its infringing merchandise to buyers in New York City.

42. Defendant has also made sales of its infringing merchandise to the general public through various wholesalers and retailers throughout New York State and in this judicial district.

43. Defendant's goods are of inferior quality to authorized products bearing the NYPD Trademarks.

44. If the sale of the counterfeit and infringing merchandise by the Defendant is not enjoined by this Court: (a) the public will be confused, misled and deceived as to the source and origin of Defendant's products and will mistakenly assume that Defendant's goods are authorized, sponsored, approved or produced by or for the City or its agencies, or that Defendant is affiliated with the City or its agencies; (b) consumers will be misled into purchasing inferior-quality, unauthorized products, causing dilution and irreparable damage to the distinctive value and reputation of the NYPD Trademarks and the City's licensing program; (c) the Defendant will be unjustly enriched by its misappropriation of the substantial goodwill of the NYPD Trademarks; and (d) fundraising efforts for the NYPD and the City will suffer the permanent loss of substantial revenues from the sale of licensed products.

45. After the events of September 11, 2001, people desiring to show their support for the City through the purchase of licensed merchandise waited in long lines to purchase merchandise bearing the NYPD Trademarks from Defendant's store because of such consumers' mistaken belief that Defendant's merchandise is licensed and/or authorized and approved by the City and/or the NYPD.

46. That mistaken belief that Defendant's merchandise is licensed and/or authorized and approved by the City and/or the NYPD is reinforced by, among other things, (1) Defendant's sale of counterfeit and unauthorized NYPD merchandise side-by-side the sale of licensed NYPD merchandise bearing official hangtags; (2) the location of Defendant's store, which is in close proximity to a FDNY firehouse and next door to "The Original Firestore"; (3) the misleading corporate name of Defendant, which falsely implies sponsorship, endorsement and/or approval of the NYPD and/or the City.

47. The City has no adequate remedy at law.

## COUNT I
### (False Designation of Origin In Violation Of 15 U.S.C. § 1125(a))

48. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 47 as though fully set forth herein.

49. Defendant's use of copies or simulations of the NYPD Trademarks is a use in interstate commerce of a false designation of origin and/or a false description or representation, including words or symbols tending falsely to describe or represent the same.

50. Such use has misled, and will continue to mislead, the public into believing that Defendant and its counterfeit and infringing merchandise originates with Plaintiff, is licensed by Plaintiff, or is in some way sanctioned by or affiliated with Plaintiff or its agencies.

51. By so imitating, counterfeiting and infringing the NYPD Trademarks, Defendant has willfully violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52. Defendant's unauthorized distribution and sale of the counterfeit and infringing merchandise has resulted in profits to Defendant and has thereby deprived Plaintiff of revenue to which it is entitled.

53. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

## COUNT II
### (Trademark Dilution in Violation of 15 U.S.C. § 1125(c))

54. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiff's NYPD Trademarks are inherently distinctive and famous, and through many years of use by Plaintiff they have come to represent, worldwide, the highest standards of quality and character unique to the NYPD.

56. Since September 11, 2001, the names and indicia of the New York City Police Department have received extraordinary amounts of unsolicited, favorable publicity, and the public recognition of and admiration for these agencies and their names, marks, and logos has achieved levels heretofore unheard of in the City's history.

57. The NYPD Trademarks have, in many instances, been in use for over a century, and became distinctive and famous well prior to Defendant's infringing use of such marks.

58. Defendant's use of imitations of the famous and distinctive NYPD Trademarks constitutes a commercial use in commerce of a mark or trade name, which has

caused and will continue to cause irreparable dilution of the distinctive quality of Plaintiff's NYPD Trademarks.

59. By its acts the Defendant has willfully intended to trade on Plaintiff's reputation/or the reputation of the NYPD and to cause dilution of Plaintiff's famous and distinctive NYPD Trademarks.

60. By reason of the foregoing, Plaintiff is entitled to injunctive and other relief.

61. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

### COUNT III
### (Common Law Unfair Competition)

62. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-61 as though fully set forth herein.

63. Defendant's use of imitations of Plaintiff's NYPD Trademarks constitutes misappropriation and infringement of such marks, actionable under the law of unfair competition.

64. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

### COUNT IV
### (Trademark Infringement in Violation of General Business Law § 360-k)

65. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-64 as though fully set forth herein.

66. Defendant's use of copies of Plaintiff's NYPD Trademarks in New York State without Plaintiff's consent, for the purpose of manufacturing and/or selling counterfeit and

infringing merchandise, has caused and continues to cause confusion, mistake and deception in the minds of the public.

67. By manufacturing and/or selling the counterfeit and infringing merchandise, Defendant has counterfeited and infringed Plaintiff's trademarks registered under New York state law, and has willfully violated Section 360-k of the New York General Business Law.

68. Defendant's misappropriation, counterfeiting and infringement of Plaintiff's NYPD Trademarks in New York State were willfully committed with the intent to cause confusion or mistake or deception among the consuming public.

69. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in New York General Business Law §§ 360-k and 360-l.

## COUNT V
### (Deceptive Trade Practices and False Advertising In Violation Of New York General Business Law Sections 349 And 350-a and -d)

70. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-69 as though fully set forth herein.

71. Defendant's misappropriation, counterfeiting and infringement of Plaintiff's NYPD Trademarks represent a deliberate attempt to mislead consumers into believing either (a) that the Defendant is in some manner affiliated with or sanctioned by Plaintiff and/or the NYPD; or (b) that the Defendant's merchandise is authorized, sponsored, or otherwise affiliated with Plaintiff and/or the NYPD.

72. By engaging in such false and misleading marking of its products, Defendant has engaged in deceptive acts or practices in violation of New York General Business Law § 349 and false advertising in violation of New York General Business Law § 350-a and –d.

73. Such violations have resulted, upon information and belief, in profits to Defendant and have substantially harmed Plaintiff by depriving it of revenue to which it is entitled as a result of Defendant's unauthorized association of its merchandise with the NYPD.

74. By reason of the foregoing, Plaintiff is entitled to the remedies provided for in New York General Business Law §§ 349 and 350-a and -d.

## COUNT VI
### (Violation Of New York General Business Law Section 360-l)

75. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-74 as though fully set forth herein.

76. Defendant's misappropriation, counterfeiting and infringement of Plaintiff's NYPD Trademarks create a likelihood of dilution of the distinctive quality of such marks in violation of Section 360-l of the New York General Business Law.

77. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in Section 360-l of the New York General Business Law.

## COUNT V
### (Trademark Infringement In Violation Of New York Arts And Cultural Affairs Law Section 33.09)

78. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-77 as though fully set forth herein.

79. Defendant's possession of counterfeit marks and/or dies, plates, brands or other things for the purpose of making false or counterfeit trademarks, and its acts of affixing copies and/or confusingly similar variations of Plaintiff's NYPD Trademarks to the counterfeit and infringing merchandise, without Plaintiff's consent, knowing the same to be an imitation of

Plaintiff's Trademarks and knowingly selling or offering such merchandise for sale constitute a violation of New York Arts and Cultural Affairs Law §§ 33.09(2), (3) and (4).

80. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

**WHEREFORE,** Plaintiff prays that this Court:

A. Declare that the City's NYPD Trademarks are valid;

B. Declare that Defendant, by the acts complained of herein, has infringed and diluted Plaintiff's NYPD Trademarks and has competed unfairly with Plaintiff and its licensees, and that the acts of the Defendant complained of herein will damage and diminish the distinctiveness of the NYPD Trademarks unless enjoined by this Court,

C. Order that Defendant, its officers, agents, servants, employees, warehousemen, warehousers, and all other persons in concert or participation with Defendant be permanently enjoined from further acts of trademark infringement, dilution, or unfair competition, and particularly from, in any manner, directly or indirectly:

    (a) using or otherwise infringing Plaintiff's NYPD Trademarks;

    (b) using any mark or indicia that incorporates any of Plaintiff's NYPD Trademarks;

    (c) manufacturing, distributing, circulating, selling, marketing, moving or otherwise disposing of merchandise bearing any simulation, reproduction, counterfeit, copy, colorable imitation or confusingly similar imitation of Plaintiff's NYPD Trademarks, or marketing, advertising or displaying its goods in any way that tends to deceive, mislead or confuse the public into believing that Defendant's merchandise is in any way sanctioned by or affiliated with Plaintiff or an of its agencies;

        (d) using any false designation of origin or false description (including, without limitation, any letters or symbols) which can, or is likely to, lead the trade or public to believe that any product manufactured, advertised, distributed and/or sold by the Defendant is in any manner associated or connected with Plaintiff, or is sold, licensed, sponsored, approved or authorized by Plaintiff;

        (e) otherwise competing unfairly with Plaintiff, its agencies, or its authorized licensees;

        (f) diluting the distinctive quality of Plaintiff's NYPD Trademarks; and

        (g) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

D.    Order that Defendant be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, the NYPD Trademarks, as well as all manufacturing plates, screens, molds, matrices, or other equipment used to reproduce the NYPD Trademarks.

E.    Order that Defendant be required to account for and pay over to Plaintiff all gains, profits and advantages realized from the sale of counterfeit and infringing merchandise;

F.    Order that Defendant be directed to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the defendant has complied with the injunction;

G.    Enter judgment against Defendant for damages, in an amount to be determined, that Plaintiff has sustained as a consequence of Defendant's acts of trademark infringement, unfair competition, deceptive and unfair practices and trademark dilution; plus Plaintiff's costs,

- 16 -

expenses and reasonable attorney fees in connection with this action as provided in 15 U.S.C. § 1117; together with

H.    Such other, further and different relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues of this suit.

Dated:    New York, New York
August 1, 2005

MICHAEL A. CARDOZO
Corporation Counsel of the
   City of New York
*Attorney for Plaintiff the*
   *City of New York*
100 Church Street  Rm 3-161
New York, New York 10007
(212) 788-0760

By: _____
GERALD E. SINGLETON (GS4750)
Assistant Corporation Counsel